IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMIL THOROGOOD,<br><br>   *Plaintiff,*<br><br> v.<br><br>LIBERTY COCA-COLA BEVERAGES, LLC,<br><br>   *Defendant.* | CIVIL ACTION<br>NO. 21-5149 |

**PAPPERT, J.**                                                                                         November 9, 2022

**<u>MEMORANDUM</u>**

  Jamil Thorogood sued Liberty Coca-Cola Beverages, LLC, alleging violations of the Americans with Disabilities Act of 1990, Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act. Liberty moves to dismiss the claims in Thorogood's Amended Complaint for disability discrimination, retaliation and failure to accommodate raised under both the ADA and PHRA. The Court grants Liberty's motion in part and denies it in part. Thorogood will be allowed one final opportunity to amend the dismissed claims.

I.

  Liberty Coca-Cola employed Thorogood as a warehouse worker for nearly five years, seemingly without major issue. Once Thorogood returned from a medical leave of absence in April of 2020, however, the parties' relationship began to fizz out. (Am. Compl. ¶ 20; ECF 8.) Thorogood complains that Liberty, through its employees,

engaged in race and disability discrimination and retaliation through their handling of Thorogood's COVID-19 diagnosis and an allegedly discriminatory masking policy.[1]

Thorogood began experiencing COVID-19 symptoms on March 25, 2020, reported his condition to Liberty, and was placed on a medical leave of absence. (*Id.* at ¶¶ 24–27.) Despite properly communicating his positive test results to Liberty, Thorogood alleges that three separate supervisors accused him, via text message, of committing "no call no show" absences. (*Id.* at ¶ 34.) Thorogood also complains that Liberty withheld all pay during his leave and failed to reimburse him until four weeks after his April 8, 2020 return to work. (*Id.* at ¶ 35.)

In May of 2020, about a month after he resumed working, Thorogood was written up for using his phone on shift. (*Id.* at ¶ 36.) When he attempted to explain that the write-up was unwarranted, because he was on break, the Plant Manager purportedly told him to "take some more medical leave if [he had] a problem with it." (*Id.* at ¶ 37.)

On July 27, 2020, a Warehouse Supervisor attempted to write Thorogood up for "misuse of FMLA leave." (*Id.* at ¶ 51.) Thorogood refused to sign the write-up because he disagreed with the allegations.[2] (*Id.* at ¶ 52.) Thorogood was fired later that day, but claims it was for his refusal to remove a "Black Lives Matter" facemask in violation of Liberty's new mask policy. (*Id.* at ¶¶ 61–63.) Liberty's policy required masks to be either plain, without writing, or Coca-Cola branded. (*Id.* at ¶ 55.)

---

[1] Because Liberty's Motion to Dismiss does not address the claims arising under the Civil Rights Act, the Court addresses those facts relevant to the disability-related claims.

[2] Although not explicitly stated, the Court interprets this to reference Thorogood's March medical leave of absence.

II.

A.

To avoid dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that a defendant is liable for the alleged misconduct. *Id.* If the court can infer only the possibility of misconduct from the "well-pleaded" facts—those supported by sufficient factual content to make them facially plausible—the complaint has not shown the pleader is entitled to relief. *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016).

Determining plausibility is a "context-specific task" requiring a court to use its judicial "experience and common sense." *Schuchardt*, 839 F.3d at 347 (quoting *Iqbal*, 556 U.S. at 675). The court disregards a complaint's legal conclusions, assumes well-pleaded facts are true and then determines whether those facts plausibly entitle the pleader to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016); *Schuchardt*, 839 F.3d at 347. In doing so, the court construes well-pleaded facts in the light most favorable to the plaintiff and draws reasonable inferences from them. *Connelly*, 809 F.3d at 790.

B.

Thorogood alleges disability discrimination and retaliation claims under both the ADA and the PHRA. As a general matter, the state and federal claims can be analyzed

concurrently because they are "closely related;" resolution of the ADA claims effectively resolves the PHRA claims  *See Niven-Himes v. Pa. Hosp. of Univ. of Pa. Health Sys.*, 2021 WL 5298982, at *2 n.1 (E.D. Pa. Nov. 15, 2021) (comparing disability discrimination claims under the ADA and PHRA, collecting cases); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (comparing anti-retaliation claims under the ADA and PHRA).  The PHRA's requirements for finding "disability," however, are slightly stricter than the ADA's. *See Gardner v. Septa*, 410 F. Supp. 3d 723, 735 n.5 (E.D. Pa. 2019), *aff'd,* 824 F. App'x 100 (3d Cir. 2020).  Here, because a plaintiff who fails to show disability under the broader ADA framework also fails, *a fortiori*, under the PHRA, it need not be separately analyzed. *Id.*

## III.

A *prima facie* case of disparate treatment arising under the ADA requires a plaintiff show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 1997).  An adverse employment action is one which alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee. *Decker v. Alliant Technologies, LLC,* 871 F. Supp. 2d 413, 429 (E.D. Pa. 2012) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997) (overruled in part on other grounds)).

As currently pled, Thorogood's COVID-19 diagnosis does not render him "disabled" or "regarded…as being disabled" for the purposes of the ADA. *See* (Am. Compl. ¶¶ 28, 29, 93, 103). Under the ADA, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life actives of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (1). Thorogood has not alleged any specific symptoms or impairments he suffered because of COVID-19, nor has he alleged what "major life activity" or activities his illness prevented him from performing. *See Payne v. Woods Services, Inc.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021).

Thorogood also fails to allege he was perceived or regarded as disabled. Liberty placed Thorogood on a medical leave of absence, but this alone does not establish he was regarded as disabled. *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1350 (M.D. Ga. 2021). Indeed, Thorogood asserts Liberty sent him back to work within two weeks, hardly the conduct of an employer who regards their employee as disabled. *See Payne,* 520 F. Supp 3d at 679.

With respect to whether Thorogood suffered a cognizable adverse employment action, the Amended Complaint alleges Thorogood received text messages accusing him of misconduct, improper write-ups and delayed compensation as a result of his COVID-19-related medical leave of absence. *See* (Am. Compl. ¶ 105). While he also alleges he was fired, he says that was because of voiced disagreement with Liberty's mask policy, not his purported disability. (*Id.* at ¶¶ 61–63.)

Text messages, written warnings and write-ups alone do not meet the definition of an "adverse employment action" when, as here, there is no allegation of material

change or adverse effect to Thorogood's employment status. *See Decker*, 871 F. Supp. 2d at 429. While withheld earnings could, in theory, result in a material change to compensation, Thorogood acknowledges he was made whole. He does not allege that he experienced any permanent wage reduction or material impact to his compensation as a result of his purported disability. *See, e.g., Cunningham v. Nordisk*, 615 F. App'x 97, 101 (3d Cir. 2015) (there is no adverse employment action absent a showing of "significant change in employment status").

## IV.

Counts V and VI also include claims for failure to accommodate. To show that an employer failed to provide reasonable accommodations or otherwise participate in the interactive process, a disabled employee must demonstrate: "(1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 319–20 (3d Cir. 1999).

Failure to accommodate claims necessarily require a finding of a "disability" as defined by the ADA. *See id.* at 306. For the reasons explained in Section III, *supra,* Thorogood fails to adequately allege a disability.

## V.

Counts VII and VIII allege claims of retaliation under the ADA and PHRA. A *prima facie* case of retaliation under the ADA requires a plaintiff to show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous

with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). "Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010).

The adverse action required to establish a retaliation claim is less exacting than the "adverse employment action" required to prove a claim for discrimination. ADA retaliation claims are analyzed under the Title VII retaliation claim framework. *Krouse,* 126 F.3d at 500. A plaintiff claiming retaliation must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Moore*, 461 F.3d at 341 (quoting *Burlington N. & Santa Fe Rail. Co. v. White*, 548 U.S. 53, 54 (2006)).

Here again Liberty moves to dismiss Thorogood's retaliation claims for failure to adequately plead an adverse employment action. While the text message warnings, write-ups and delayed compensation are insufficient to constitute an "adverse employment action" for the purposes of a discrimination claim, they are sufficient at this stage to plausibly allege adverse action and causation for a retaliation claim. Moreover, Thorogood need not be a "qualified individual with a disability" to assert a claim of retaliation under the ADA. *See Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (citing *Krouse,* 126 F.3d at 498). The ADA protects "any individual" who has made a charge under the ADA, and an employee's request for reasonable accommodation is a protected activity. *Id.*; *Schneider v. Works*, 223 F. Supp.

3d 308, 320 (E.D. Pa. 2016) (citing *Jackson v. J. Lewis Crozer Library*, 445 Fed. App'x. 533, 536–37 (3d Cir. 2011)).

Thorogood adequately pleads that he "requested reasonable accommodation of medical leave given his COVID-19 diagnosis." (Am. Compl. ¶ 113.) A leave of absence for medical treatment can be considered a reasonable accommodation. *Garner v. School Dist. of Philadelphia*, 63 F. Supp. 3d 483, 492. *See also Laguna v. Chester Housing Authority,* No. 22-1569, 2022 WL 2953687 at *3 (E.D. Pa. July 25, 2022). While FMLA leave alone is not considered a reasonable accommodation, see *Payne*, 520 F. Supp. 3d at 608, Thorogood alleges that he sought a medical leave of absence more broadly. Whether or not he was ultimately granted FMLA leave is not dispositive at this stage because a retaliation inquiry concerns the request to accommodate, not the accommodation itself. *See Schneider*, 223 F. Supp. 3d at 320.

Once a plaintiff has shown he engaged in a protected activity, he then must show the protected activity caused a "materially adverse" action. *See Mitchell v. Miller*, 884 F. Supp. 2d 334, 378 (W.D. Pa. 2012) (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67–71 (2006)). Materially adverse actions are those which could dissuade an objectively reasonable employee from engaging in the statutorily protected conduct. *Id.* Causation can be proven when "temporal proximity between the protected activity and the [adverse action] is sufficient to establish a causal link." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997) (quoting *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989)).

For now, Thorogood has sufficiently pleaded a claim for retaliation. When viewed in a light most favorable to Thorogood, pay withholding, unwarranted write-ups

and repeated admonishments could dissuade an objectively reasonable employee from requesting an accommodation. Thorogood has also sufficiently alleged that the adverse actions were caused by his protected activity; they occurred shortly after his leave and, in one instance, made direct reference to it.

## VI.

Because Thorogood fails to adequately allege an ADA disability and an adverse employment action for the purposes of his disability discrimination claims, Counts V and VI are dismissed, albeit without prejudice. Liberty's motion is denied with respect to Counts VII and VIII.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.